<pre>
 1                UNITED STATES DISTRICT COURT
                  DISTRICT OF NEW JERSEY
 2
   MINMETALS, INC.,                     .
 3                                       .
           Plaintiff,                    .
 4                                       .  Case No. 13-cv-03834
   vs.                                   .
 5                                       .  Newark, New Jersey
   DRAGON BOOM, LTD.,                    .  February 11, 2014
 6                                       .
           Defendant.                    .
 7                                       .

 8
                     TRANSCRIPT OF HEARING
 9           BEFORE THE HONORABLE CATHY L. WALDOR
                UNITED STATES MAGISTRATE JUDGE
10

11  APPEARANCES:

12  For the Plaintiff:     GREGORY KARL MUELLER, ESQ.
                           Law Offices of Gregory K. Mueller, PC
13                         26 Franklin Street
                           Tenafly, NJ 07670
14                         (201) 567-4969
                           Email: Gmueller@muellerfirm.com
15
                           LEODIS C. MATTHEWS, ESQ.
16                         Dacheng Law Offices
                           Email: Leodis.matthews@dachenglaw.com
17                         Tel: 001-323-930-5690

18  For the Defendants     KEVIN GERARD WALSH, ESQ.
    B & H American         Gibbons PC
19  Inc., Gary             One Gateway Center
    International          Newark, NJ 07102
20  Holdings Limited,      (973) 596-4500
    Hangzhou Baohang       Email: Kwalsh@gibbonslaw.com
21  Industrial
    Investment Limited,    WILLIAM H. DEVANEY, ESQ.
22  Min Dang and Xiyou     Venable LLP
    Xu                     Rockefeller Center
23                         1270 Avenue of the Americas
                           Twenty-Fourth Floor
24                         New York, NY 10020
                           (212) 983-8204
25                         Email: Whdevaney@Venable.com
</pre>

```
 1
    For the Defendant      JOHN J. JANIEC, ESQ.
 2  Dragon Boom, Ltd.:     350 Fifth Avenue
                           Suite 4510
 3                         New York, NY 10118
                           (212) 629-0027
 4                         Email: Jjaniec@jjjlawoffice.com

 5


 6
    Audio Operator:
 7
    Transcription Service:     KING TRANSCRIPTION SERVICES
 8                             901 Route 23 South, Center Ste. 3
                               Pompton Plains, NJ 07444
 9                             (973) 237-6080

10  Proceedings recorded by electronic sound recording; transcript
    produced by transcription service.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (Commencement of proceedings at 11:21 A.M.)

2

3          THE COURT:  We're here on Minmetals versus Dragon

4    Boom, Docket Number 13-3834.

5          May I have appearances, please?

6          MR. MUELLER:  For the plaintiff Minmetals,

7    Your Honor, Gregory Mueller of the law offices of Gregory K.

8    Mueller, PC.

9          MR. MATTHEWS:  And Leodis C. Matthews, Your Honor,

10   of the Dacheng Law Offices.

11         MR. WALSH:  Good morning, Your Honor, Kevin Walsh

12   from Gibbons representing various defendants: B & H American

13   Inc., Gary International Holdings Limited, Hangzhou Baohang

14   Industrial Investment Limited, as well as Min Dang and Xiyou

15   Xu.

16         And to my right, your left, Your Honor, is William

17   Devaney from Venable, admitted pro hac vice and, with the

18   Court's permission, will be arguing behalf of those

19   defendants I just enumerated.

20         MR. DEVANEY:  Good morning, Your Honor.

21         THE COURT:  Good morning.

22         MR. JANIEC:  Good morning, Your Honor, my name is

23   John Janiec, and I appear for the defendant Dragon Boom.

24         THE COURT:  Thank you.

25         Defendants, this is your motion, and we're here on

1  the motion to stay discovery.  And I take note that we've

2  reviewed the various submissions, Docket Number 42, 46, and

3  47, as well as pending motions before the district judge,

4  Judge Hayden.

5            So I'll permit you to advance your arguments.

6            MR. DEVANEY:  Very good.  Thank you very much,

7  Your Honor.

8            As Your Honor alluded to, there's been a lot of

9  activity in this case, to say the least.  There's been

10  litigation in state court.  When we became involved, we

11  remanded to federal court here.  There are six pending

12  motions, including this one, before this Court.  There's been

13  litigation in China, both arbitrations before SETAC,

14  litigation before the Beijing People's Intermediary Court,

15  and also litigation in Hong Kong, with respect to asset

16  freezes.

17            But the issue before Your Honor today is a very

18  narrow one, and that is whether to stay discovery pending the

19  outcome of a motion to compel arbitration, which is before

20  the District Court.  That motion was fully briefed in early

21  September, pending before the District Court, and I would

22  hope and anticipate a decision in the not-too-distant future.

23            And a motion to stay makes sense, because in that

24  motion to compel arbitration, the court will either decide we

25  ought to arbitrate this before SETAC in China, will obviate

 1   the need for any discovery whatsoever, or the Court will

 2   narrowly tailor the discovery to the issue of arbitrability,

 3   in other words, the issue of Li Zheng's authority.

 4              And let me take a step back into the background, if

 5   I may.  If Your Honor would like, I can go through the

 6   tortured procedural history to this case, but I'd prefer to

 7   just kind of stick with the basics for purposes of this

 8   motion.

 9              THE COURT:  Okay.

10              MR. DEVANEY:  But at any time the Court would like

11   to hear more, I'm happy to do it.

12              Plaintiff Minmetals is the U.S. arm of a giant

13   Chinese state-owned enterprise.  It's one of the largest

14   corporations in the world.  It's a global Fortune 200

15   corporation.  The defendants' various trading companies,

16   except for Hangzhou Baohang, which has an ownership interest

17   in various of the defendants, and that too is a large Chinese

18   corporation, the individual defendants are the owners and

19   operators of some of those trading companies, but

20   significantly -- and this is a name I had mentioned a moment

21   ago, one of the individual defendants is Li Zheng.  By -- in

22   plaintiff's complaint, they describe Li Zheng as the head of

23   their rare earth business at the relevant time and the

24   authorized signatory to the contracts.

25              THE COURT:  And a trusted executive employee.

1          MR. DEVANEY:  Correct.  He is still a trusted

2    executive employee.  And we understand he was actually

3    promoted at China Minmetals in 2012.

4          At the heart of this dispute are seven commercial

5    contracts and a purchase order that Mr. Zheng executed on

6    behalf of Minmetals.  They're all for either the purchase or

7    the sale of rare earth.  And rare earth is a mineral that is

8    used in various industrial applications, making batteries,

9    they go into, you know, various high tech.  And most of the

10   rare earth in the world comes from China.  So China really

11   controls the market.

12         In seven of those eight, the defendants were

13   purchasing rare earth from the plaintiffs.  In one of the

14   transactions, the defendants actually sold rare earth to the

15   defendants [*sic*].

16         The amount of rare earth that the defendants

17   purchased from plaintiffs is $8.5 million worth of rare

18   earth.  The one transaction of which I alluded to is and

19   which one of the defendants, B & H, sold rare earth to the

20   plaintiffs, was about a $1.2 million transaction.

21         The defendants have performed each and every one of

22   these contracts, meaning, in all instances, they paid one,

23   and we paid $8.5.  We've delivered the rare earth in the one

24   instance in which we were delivering it.

25         Plaintiffs -- and I don't mean to argue

1  Mr. Janiec's brief with respect to Dragon Boom, Dragon Boom

2  paid approximately $2.4 million in two of the transactions

3  for rare earth.  The defendants never delivered their -- I'm

4  sorry, the plaintiffs never delivered the rare earth, never

5  returned the money to Dragon Boom.

6           That is the subject of one of the SETAC

7  arbitrations.

8           On the flip side, in the one instance where B & H

9  sold rare earth to defendants -- I'm sorry to plaintiffs --

10 the plaintiffs kept the rare earth, did not return it to us,

11 and never paid the $1.2 million.

12          Significantly, with respect -- these transactions,

13 there's an arbitration clause and a very broad one, which

14 says all disputes arising from or in connection with the

15 contracts should be arbitrated in front of SETAC in China.

16 Not should be arbitrated; actually must be arbitrated.  The

17 choice of law in those contracts is China.  The place of the

18 signing, because of Li's at all times was in China, was

19 China.  The origin of the goods, with one exception, was

20 China.  And the -- with one exception was China.

21          At the heart of this dispute is that plaintiffs

22 argue, we, the defendants, bought rare earth at below market,

23 and the one instance when we sold it and -- we sold it at

24 above-market prices.  And that we stole customers from them

25 in the process of these various transactions.

 1          How this came about is they say because we're in

 2     cahoots with Li Zheng.  And they offer no motive for Li Zheng

 3     to have done this in the dozens of briefs that have been

 4     filed and now probably approaching thousands of exhibits,

 5     short of they all went to college together in China.

 6          Now, turning to the motion to stay discovery,

 7     let -- the one issue before the Court at this time really

 8     comes from the Federal Arbitration Act, which in and of

 9     itself is a very strong policy in favor of arbitration.  And

10     as the Third Circuit has laid out in the Clapper [phonetic]

11     case, the reason for that is you don't want parties who have

12     contracted to arbitrate, to have the expense, delay and

13     inconvenience of litigating under the federal rules if they

14     have contracted not to do that.  And, in fact, a court's

15     jurisdiction where there's an issue of arbitrability is

16     limited that issue.  And if the court decides any discovery

17     is necessary, that discovery also must be limited to the

18     narrow issue of arbitrability.

19          THE COURT:  So Mr. Zheng's authority goes to, or

20     does it not, arbitrability?

21          MR. DEVANEY:  It does, Your Honor.  And I believe

22     and we have argued that it is the sole issue.  And it's not

23     just his apparent authority, which we mentioned it, on the

24     face of the complaint, head of the business, authorized

25     signatory and trusted executive; it's also his apparent

 1  authority.  Did we know, given all of that, given that that's

 2  the face Minmetal puts to the outside world on Li Zheng,

 3  could we have known, should we have known that he did not

 4  have the authority to enter into these contracts?

 5          Now, I'm skipping ahead a little bit, but under

 6  Guidotti analysis, a court is to determine on the face of the

 7  complaint in the first instance, whether or not the case

 8  should be sent to arbitration under a 12(b)(6), under a

 9  motion to dismiss standard.  We believe that that's apparent

10  from his apparent authority and also the actual authority --

11  I'm sorry -- the actual authority is readily apparent

12  authority.  They have to come forward with reliable evidence,

13  more than mere assertion, more than a naked conclusion that

14  he was not authorized, both actual authority as well as

15  apparent authority.

16          Our argument is they have not done that.  They

17  cannot do this, and the case should proceed immediately to

18  China.

19          However, under the Guidotti standard, the Third

20  Circuit has held that if a district court determines that

21  they have come forward with reliable evidence, then they may

22  proceed to discovery, but only on the sole issue of

23  arbitrability; in this case, the sole issue of Li Zheng's

24  authority.  Then the district court can come back after that

25  point -- is to come back after that point and determine it

 1   under a Rule 56 standard.

 2            Guidotti -- I think the elephant in the room here

 3   now is what about the Superior Court order?  Has this been

 4   raised before?  In the Superior Court before this case was

 5   removed, obviously, there was a motion to dismiss the

 6   complaint, and one of the arguments made was that there's an

 7   arbitration clause, and this should be sent immediately to

 8   China.

 9            The plaintiffs argue that the entire contract was a

10   fraud, that they were fraudulently induced into entering into

11   a contract.  And the Superior Court, as -- using the

12   appropriate standard, taking all allegations in the best

13   light for the plaintiff, looked at the actual allegations,

14   because if they are arguing fraudulent inducement, that's a

15   one-way ticket to arbitration, that's something that must be

16   arbitrated.

17            So the Superior Court, looking at the totality of

18   their allegations, said, no, you're really talking about Li

19   Zheng's authority.  You say she [*sic*] didn't have the

20   authority.  And that is something for the court to decide in

21   the first instance.  And that, then, is what the Superior

22   Court did.  The court decided the gist of the allegations are

23   Li Zheng lacked the authority; that is something for the

24   court and not the arbiters to decide.

25            Having denied the entire motion to dismiss, the

1  Superior Court then jumped over the entire Guidotti analysis

2  and ordered discovery to proceed.

3         You can't blame the Superior Court for doing that,

4  because Guidotti hadn't been decided.  Guidotti was decided

5  five months later.  The Third Circuit specifically says in

6  Guidotti that there were different precedents, different

7  standards flying around the Circuit, and they were looking to

8  standardize them.  And they came up with exactly that process

9  that I laid out for Your Honor, that -- so if you look at the

10  Superior Court decision, the Superior Court, contrary to what

11  plaintiffs have said in various pleadings, did not decide

12  that we were not permitted to arbitrate, did not say that the

13  arbitration clause was invalid, did not say that Li Zheng had

14  authority.

15        The only thing the Superior Court said is we decide

16  this.  I decide this.  That's the "who" decides it.

17        What the Superior Court didn't address is how it is

18  to be decided.  That's Guidotti.  Guidotti lays out how

19  these -- this process is to go.

20        Therefore, Your Honor, we would request, we think

21  it's practical, there's a long line of federal case law

22  before Guidotti that where a motion to compel is pending,

23  discovery is stayed.  We do not believe that's inconsistent

24  with the Superior Court's order.  Of course, the Superior

25  Court did not have the benefit of Guidotti.  This is the same

1  motion we would be making before the Superior Court if we

2  were still there.

3          Additionally, I simply point out to Your Honor that

4  once this case had been removed, this Court has the

5  discretion, as well, to revisit any orders of the Superior

6  Court.  We don't believe that's necessary, because we don't

7  believe that's inconsistent.

8          And finally, just as a practical matter, as we

9  noted, this case had been fully briefed for about five-plus

10  months now.  A decision should be coming down imminently from

11  the District Court, and it makes the most sense to just keep

12  things in the status quo, until we've gotten guidance on

13  either we're going to arbitrate, or there's going to be

14  discovery on this narrow issue and not the broad-based

15  discovery that plaintiffs have propounded.

16          THE COURT:  And we have not even Rule 16'd this

17  case.

18          MR. DEVANEY:  We have not, Your Honor.

19          THE COURT:  So there is no discovery order,

20  scheduling order in place.

21          MR. DEVANEY:  Not from the federal court,

22  Your Honor, that's correct.

23          THE COURT:  Okay.  Thank you.

24          MR. DEVANEY:  Thank you.

25          THE COURT:  Who will be arguing?

1              MR. MATTHEWS:  I will, Your Honor, thank you.

2              THE COURT:  You can stay at the table or use the

3     podium.  It's up to you, wherever you're more comfortable.

4              MR. MATTHEWS:  No, Your Honor, if the Court pleases

5     I'm happy to step up to the table.  And appreciate the time

6     that the Court has taken.

7              Your Honor, the briefs that were filed in this case

8     was an effort to acquaint the Court with some of the details

9     of the case so that the Court would have a feel for the

10    history of the case and the issues.

11             Obviously, we differ with the defendants'

12    characterization of what the complaint is all about.

13             The complaint, we feel, and the dispute between the

14    parties stem from an agreement that was made prior to any

15    contracts at all that was executed, between Dang Min and Li

16    Zheng in a meeting in an effort to undertake and conspire to

17    use assets of Minmetals, and then after that time, in fact, a

18    month later, they put into place a plan.

19             The evidence that we have -- and there is --

20    counsel seems to indicate that there is no proof.  Obviously,

21    that's disputed.  We've recently filed before the Court a

22    motion for a preliminary injunction, and in there, we have

23    detailed emails between Li Zheng and Dang Min with respect to

24    confidential, normally trade secret information that

25    Minmetals contained [*sic*].  The -- in discovery, we have

1    evidence that, in fact, they entered into an agreement.

2    That's undisputed.  So the email, the secretive communication

3    between the two, basically set up the scheme that they were

4    going to undertake.

5         The evidence that we have sought in this case, have

6    been from Dang Min with respect to those emails.  And I would

7    just cut right to the chase, Your Honor.  The state court

8    judge, who was very familiar with all the details in this

9    case, ordered that the defendants produce their emails.  And

10   that was done over a year ago.  And at that time, that order

11   was outstanding for over almost 7 months before this case

12   actually -- before the case was moved from state court to the

13   federal court.

14        I might also point out, Your Honor, that at the

15   time, the defendants were also facing a motion from the state

16   judge with respect to an order to show cause, why they should

17   not -- why they should not be held in contempt with respect

18   to the filing of an arbitration, B & H; exactly, the very

19   instant that they're speaking about today.

20        Now, what happened before the state court on the

21   merits, is that the state court looking at the case as a

22   whole, determined that there would -- that the discovery

23   would go forward unlimited.  That was the determination.  And

24   if the Court were to review that January 2d order from Judge

25   Velazquez, he essentially stated that in order for him to

1  hold a hearing on the issue of the arbitrability of Li

2  Zheng's authority to have put in the arbitration clause, he

3  would basically have to hear it, the whole case; he would

4  have to hear the issue concerning his authority.  And that

5  was a relatively broad issue.  The discovery that he ordered

6  in this case goes exactly to the issue that counsel has

7  argued about:  Whether or not Dang Min knew at the time he

8  entered into this agreement that it was not based upon any

9  apparent authority, but it was a secret agreement between

10  them in order to exploit a rare earth market that was

11  exploding at the time.

12        I think it's important, Your Honor, to sort of have

13  a sense of those substantive issues, because in this case,

14  when Hangzhou Baohang joined the litigation or answered,

15  finally, the case and eventually moved it to the federal

16  court, the court had already ordered sufficient discovery and

17  provided to defendants an opportunity to come back in after

18  discovery at any time that they thought that there hadn't

19  been sufficient discovery.  The plaintiffs had submitted to

20  the court in an order to compel, a motion to compel, which

21  the court agreed that the emails from the defendants should

22  be produced.

23        So the defendants in this case had every

24  opportunity to go back before the state court and say let's

25  litigate the issue of the arbitrability.  They did not do

1    that.

2            The central issue before this Court has to do with

3    the issue of -- of whether or not discovery should be stayed.

4    And I --

5            THE COURT:  Well, you know why I'm confused,

6    because I'm not really sure what the issue is.  Is the issue

7    whether or not Mr. Zheng was cloaked with the authority to

8    enter into a contract?  Or is the issue that there were some

9    secret meetings that -- that resulted in fraud in the

10   inducement of the contract?  I don't -- I'm a little

11   confused.

12           And obviously, that has lot to do with not only

13   today's proceeding but on a go-forward basis before Judge

14   Hayden, all of those motions.

15           MR. MATTHEWS:  We believe that -- we briefed this,

16   Your Honor -- that it has to do with the secret meetings and

17   the secret agreement before any of these contracts ever came

18   in.  And it's -- it's the plaintiff's position that this

19   isn't about seven or eight contracts.  This is about an

20   entire course of fraud and breach of fiduciary duty.

21           THE COURT:  So he didn't have the authority because

22   he was acting fraudulently?  Is that what your argument is?

23           MR. MATTHEWS:  He did have -- no, Your Honor.

24           THE COURT:  Okay.

25           MR. MATTHEWS:  To be specific, the only arbitration

1   agreements that existed with any of Minmetal's customers were

2   with these defendants.

3              THE COURT:  Right.

4              MR. MATTHEWS:  We've provided evidence,

5   essentially, an affidavit stating that he had no authority to

6   put in any of the agreements that he had with any customers,

7   a arbitration and a choice of law provision.  Normally their

8   transactions take place by what are called purchase orders.

9   And the company used standard purchase orders.  These are the

10  only defendants that had purchase orders and a -- I would

11  point out, secret contract.  These contracts never came to

12  Minmetal's attention until this matter essentially became in

13  dispute.

14             THE COURT:  So they're secret contracts because

15  Zheng was the only one in the company that knew about them?

16             MR. MATTHEWS:  That is correct, Your Honor.

17             THE COURT:  But isn't Zheng an executive?

18             MR. MATTHEWS:  He is, Your Honor.  He was the -- at

19  that time head of what was called the rare earth division.

20             And I should point out to the company -- point out

21  to the Court that Minmetals U.S.A. is what we're talking

22  about.  They've pointed out that it's a subsidiary, but this

23  company is a New Jersey company.  The department that he in

24  was not a huge department.  He was in charge of that

25  department.

 1            The evidence shows that he entered into this secret

 2    agreement.  They'd exchanged emails.  Our petition is he did

 3    not have the authority to -- to put in any agreements a --

 4            THE COURT:  Arbitration?

 5            MR. MATTHEWS:  -- arbitration agreement with

 6    respect to SETAC or with respect to the choice of law.

 7            And all the other agreements that were used by the

 8    company were purchase orders which did not contain this

 9    arbitration or choice of law provision that everything would

10    be held or litigated in China.  For example, B & H, one of

11    the defendants at the core of this case, is a New Jersey

12    corporation delivered within the state of New Jersey to

13    Minmetals, a New Jersey company, an order.  Our proof shows

14    that that product actually came from the scheme and actually

15    belonged to Minmetals.  That's a larger part of this case.

16            It's a little bit confusing, Your Honor, but this

17    case has been going on for two years, so we're conversant

18    with the facts.

19            But to bring the Court up to date, the defendants

20    were engaged in a transaction, doing investment, then used

21    the funds and money to do another investment and another

22    investment.  So we've been able to trace that that

23    transaction with B & H, which eventually led to this lawsuit,

24    was actually with product that was stolen from Minmetals in

25    a -- based of a corporate opportunity.

1          THE COURT:  How do -- how do you know it was

2    stolen?

3          MR. MATTHEWS:  We have the documents which prove

4    exactly how it was acquired.  We have the evidence that shows

5    the transaction that resulted in that particular transaction.

6          And I would point out to the Court, as counsel has

7    stated, there's a litigation in Hong Kong --

8          THE COURT:  Right.

9          MR. MATTHEWS:  -- where we put in in evidence

10   before a Hong Kong court, essentially proving that the money

11   that B & H received was actually from scheme and had been

12   stolen from Minmetals, and the court there put in place a

13   freeze order.  So that money now is being frozen, being held

14   in accordance with our injunction proceedings.

15         But the core issue before this Court under

16   Rule 26(c) is really the standard by which this Court should

17   view what has been taking place there.  First of all, the

18   entire purpose of their claim to arbitration is that we have

19   to save costs, we have to make it convenient, and we cannot

20   prejudice the defendant if there's an arbitration clause.

21         This case, Your Honor, has been going on now for

22   over two years.  Most of that time, the defendants have

23   actively participated in discovery, selectively.  We dispute

24   that there were thousands of documents.  In fact, there were

25   only a few hundred exchanged from the defendant.  And as is

1  pointed out on Exhibit 18 in the affidavit that is filed by

2  counsel --

3          THE COURT:  I'm listening, I'm just trying to get

4  on.

5          MR. MATTHEWS:  -- the judge entered -- Judge

6  Velazquez entered a very specific order after much of going

7  back and forth to the purpose of the emails.  We demonstrated

8  that those emails were integral to our position proving that

9  Li Zheng entered into a secret agreement with Min Dang and

10  the emails would demonstrate that.  They never produced them.

11  They never complied with that.  We were filing a motion to

12  compel when this case was moved.

13          So I would point out, Your Honor, that there's been

14  considerable litigation back and forth.  And the issue at

15  this point is whether or not there's going to be any undue

16  harm to the defendants.

17          The only thing that they are not producing have

18  been things that a state court judge has ordered them to

19  produce, after having heard all the arguments from both

20  sides.

21          On the other hand, the plaintiff is going to be

22  significantly damaged, because the issue that we believe

23  these emails in particular will demonstrate is that there was

24  this prior agreement and that Li Zheng was acting without

25  authority and that these arbitration clauses were put in as a

1 part of their scheme to take it away from the United States

2 and have those issues decided in a different forum.

3          I would point out, Your Honor, that counsel has --

4 they've argued that the FAA have their standards, and that's

5 a substantive issue for the district court to decide on the

6 issue of looking at whether or not there's arbitrability.

7 The issue was decided over a year ago.  On January 3rd, Judge

8 Velazquez entered his decision.  We did not have this motion

9 to stay until February of 2014.  That's an entire year.

10          THE COURT:  What about the Guidotti case, though?

11          MR. MATTHEWS:  I'm sorry, Your Honor?

12          THE COURT:  What about the Guidotti case which was

13 decided after?

14          MR. MATTHEWS:  The Guidotti case was decided in

15 March of 2013, Your Honor.

16          THE COURT:  Right.

17          MR. MATTHEWS:  So from the time of March of 2013

18 until almost a year later --

19          THE COURT:  Oh, I see what you're saying.

20          MR. MATTHEWS:  -- the defendants took no action,

21 certainly --

22          THE COURT:  Okay.

23          MR. MATTHEWS:  -- on discovery issues under

24 Rule 72(a), if there's going to be an appeal or challenge to

25 a discovery, it has to be timely.  In this case, they've

1  waited over a year before filing this.  I would submit,

2  Your Honor, that it's untimely.  The -- they have made no

3  attempt at all to argue prejudice or harm to them from

4  complying with discovery.  On the other hand, Your Honor, the

5  plaintiffs would be significantly damaged from being able to

6  move forward.  As counsel has pointed out, there's been

7  significant litigation.  There are motions pending which go

8  to the merits of this case.

9          We're in the process and very close to being able

10 to file a summary judgment.  They've known that for over a

11 year, since the judge ordered --

12         THE COURT:  You're not very close to filing a

13 summary judgment.

14         MR. MATTHEWS:  Well, I would agree, Your Honor, but

15 only --

16         THE COURT:  Judge Hayden would agreed, because she

17 requires that final pretrial order be signed off by me prior

18 to the filing of any disposition -- any dispositive motions.

19 Just for your information.

20         MR. MATTHEWS:  Thank Your Honor, I appreciate the

21 procedural issue there.  But our position is that the

22 discovery that we're seeking is tailored.  It goes to the

23 very same issue that is in dispute here.  And quite frankly,

24 if we were going before the District Court on the issue of

25 whether or not there's going to be discovery, we would be

 1  asking for exactly the same discovery.  The depositions of --

 2  very limited depositions with respect to Li Zheng's authority

 3  to enter into this, and the conspiracy that they entered

 4  into -- to show that there was no apparent authority.

 5            THE COURT:  Let me -- let me ask you, when you say

 6  depositions about Zheng's authority, would they be 30(b)(6)

 7  witnesses?  I mean what kind of witnesses would you depose

 8  about his authority?

 9            MR. MATTHEWS:  Certainly Min Dang with respect to

10  their -- their agreement --

11            THE COURT:  Okay.

12            MR. MATTHEWS:  -- and the exchange between them.

13  30(b)(6) is a very interesting issue, because, Your Honor, at

14  this point, the other defendant entities all had alleged --

15  for example, Dragon Boom had alleged that -- Min Dang had

16  alleged that he had nothing to do with Dragon Boom.

17            THE COURT:  Okay.

18            MR. MATTHEWS:  And he wasn't involved with them.

19  And the discovery that we've obtained is one hundred percent

20  opposite that, that he -- he was the only personal making

21  financial decisions and writing checks for -- and making

22  decisions about contracts.

23            And we have evidence that there's emails exchanged

24  between he and Li Zheng with respect to contracts concerning

25  Dragon Boom.

1          So the discovery that should go forward,

2    Your Honor.  Both parties agree that it goes to the issue of

3    Li Zheng's authority.  It's both written discovery or at this

4    point significant deposition discovery, 30(b)(6) as well as

5    of course Min Dang.

6          THE COURT:  I'm having computer problems.

7       (Pause in proceedings)

8          THE COURT:  They're fixing my computers in my

9    chambers, and we've determined that might be upsetting the

10   computers on the bench.  So I can't have access to the entire

11   docket.  But that's okay.

12         MR. MATTHEWS:  But I do want to point out

13   Exhibit 14 that's attached to their --

14         THE COURT:  I can't get -- yeah.

15         MR. MATTHEWS:  -- moving papers, it's Judge

16   Velazquez's orders.

17         THE COURT:  Right.

18         MR. MATTHEWS:  Exhibit 18 --

19         THE COURT:  We saw the opinion and the orders.

20         MR. MATTHEWS:  Exactly.  Exhibit 18, Your Honor, is

21   the order that he entered compelling them to produce the

22   emails in a form that was accessible to us.  And that has

23   been outstanding now for over a year.

24         THE COURT:  Okay.

25         MR. MATTHEWS:  So these issues go directly to that.

 1  The plaintiff would be significantly damaged at this point

 2  from now just a blanket wholesale stay of discovery.

 3              THE COURT:  Okay.  Thank you.

 4              MR. MATTHEWS:  Thank you.

 5              THE COURT:  Does Dragon Boom want to argue?  I

 6  didn't forget you.

 7              MR. JANIEC:  Thank you, Judge.  No, Judge, I'll

 8  rely on the argument by cocounsel.

 9              THE COURT:  Okay.  You want to respond?

10              MR. DEVANEY:  Thanks, Your Honor, I do, just very

11  briefly.

12              Plaintiffs had said that they've only propounded

13  narrowly tailored discovery going to the issue of Li Zheng's

14  authority, but what started our very first letter to this

15  Court and began the motion to stay the discovery was a

16  subpoena for the bank records of a non-party.

17              I don't think it helps the Court to engage in a

18  "did not/did too," although I take serious issue with much of

19  what was said.  There are many other contracts with

20  arbitration clauses.  These contracts were well known in

21  China, based upon our investigation.

22              But you hit the nail on the head, Your Honor.  The

23  issue is whether Li Zheng is cloaked in the authority to

24  enter into the contracts.  If he is, all of the merits that

25  they're talking about can be arguing before the SETAC panel

 1  in China.  If the District Court at the end of all of this

 2  determines he's not, then we will be fighting about the same

 3  things in front of Judge Hayden.

 4          But the issue right now is a stay of discovery

 5  until the motion to compel is decided, and that issue is, as

 6  you pointed out, was Li Zheng cloaked in the authority to

 7  enter into the contracts.  We believe he was.

 8          If Your Honor doesn't have any other questions, I

 9  don't have anything further.

10          THE COURT:  No.  I don't have questions.  I'm still

11  trying to understand.  The issues seem so divergent.  I

12  thought that it was very clear that the initial issue was

13  Zheng's authority or not.

14          MR. DEVANEY:  Correct.

15          THE COURT:  And was some discovery obtained with

16  respect to his authority or exchanged?  Was there some

17  discovery on that particular issue that's been exchanged?  Or

18  no?

19          MR. DEVANEY:  The Superior Court ordered discovery.

20          THE COURT:  Yeah, I see that.

21          MR. DEVANEY:  And it's been --

22          THE COURT:  -- wholehearted --

23          MR. DEVANEY:  -- you know, quite frankly --

24          THE COURT:  -- trial discovery.  I see that.

25          MR. DEVANEY:  Exactly.  And, you know, we have

 1    issues with the amount of discovery they've produced just as

 2    they have issues with the amount of discovery we've produced.

 3           THE COURT:  Okay.

 4           MR. DEVANEY:  And if we get to discovery, I think

 5    we're going to need some adult supervision to sort that all

 6    out.

 7           THE COURT:  Well, I agree with that.  I agree that

 8    there needs to be a scheduling order and that issuing

 9    non-party or third-party subpoenas prior to a scheduling

10    order was a little surprising to me, actually.

11           But what I'm getting from Minmetals is that the

12    issue is not necessarily authority.  And that's what's -- I

13    don't think that -- that that matters in terms of the motions

14    before Judge Hayden, but it mattered to us in trying to

15    prepare for today, because we couldn't quite clarify if

16    plaintiff is saying that Zheng may be an executive and he may

17    have entered into contracts, as stated in the complaint, but

18    this time, because he was acting in bad faith, he didn't have

19    the authority.  Is that -- or am I making your issues?

20           Is that -- and that's really confusing to me.  I

21    understand the -- from the defendants' standpoint what you

22    believe the issues to be, and that's what I initially

23    thought.  But --

24           MR. MATTHEWS:  Your Honor --

25           THE COURT:  They're sort of conflated, if you will.

1 | I don't --

2 |      MR. MATTHEWS:  They're certainly intertwined.  And

3 | the state court judge in looking at this -- and I'll just

4 | read a quick sentence --

5 |      THE COURT:  Uh-huh.

6 |      MR. MATTHEWS:  -- where he -- it turned out review

7 | of the Minmetal complaint demonstrate that the gist of

8 | plaintiff's claim is that its employee conspired with

9 | defendants to defraud Minmetals and to deprive it of its

10 | product and profits.

11 |      THE COURT:  But what --

12 |      MR. MATTHEWS:  So this was --

13 |      THE COURT:  -- okay, so that -- I understand that

14 | you're claiming that there was this conspiracy and this

15 | fraud.

16 |      But tie in what your opinion of Zheng's authority

17 | is.  Because you do say in paragraph 21 of the complaint, Li

18 | Zheng, a trusted executive employee of Minmetals, who as an

19 | authorized signatory for contracts on behalf of Minmetals,

20 | undertook to systemically exploit an actual and/or potential

21 | shortage in the availability of rare earth.

22 |      So your -- you have two different theories.  That

23 | paragraph says he had the authority.  But it also says he

24 | sought to exploit that authority.

25 |      And this really matters to Judge Hayden because her

1  level of authority in making her determinations on the motion

2  to compel hinge on what the issue is.

3              MR. MATTHEWS:  The -- there's never -- and I -- I

4  understand counsel now is alleging that somehow this

5  arbitration clause in and of itself, but our position is that

6  the arbitration -- he had no authority to use the arbitration

7  clause.

8              THE COURT:  Okay.

9              MR. MATTHEWS:  Or the choice of law --

10             THE COURT:  Okay.

11             MR. MATTHEWS:  -- clauses.

12             And the issue of his authority, Your Honor, has to

13  be considered not in a narrow context of just looking to see

14  if he had authority or not, because we provided declarations

15  with respect to that.  Or didn't.  And the extent of his

16  authority.

17             The issue is, What was he doing in terms of his

18  relationship with the defendants?  Did they have reason to

19  believe, because of the prior discussion and secret agreement

20  with him --

21             THE COURT:  Right.

22             MR. MATTHEWS:  -- they knew that there was no issue

23  of apparent authority.  They did not rely upon whether he had

24  apparent authority or not.

25             THE COURT:  How do they know that?

1          MR. MATTHEWS:  Well, first, Your Honor, Min Dang is

2     a former -- was a former employee of China Minmetals.  And

3     they've known each other for -- of many years.  So he knew

4     exactly the extent of his authority.

5          But our evidence demonstrate that after he left,

6     they entered and actually met -- into a secret agreement in

7     which they determined that they were going to undertake at

8     this point a scheme to exploit Minmetals and at that time

9     what was the rising cost of rare earth.

10          And just quickly, Your Honor, the Court may very

11     well recall in 2009, mid-2010, there was an issue with

12     respect to China determining that they were going to reduce

13     the amount rare earth for environmental reasons, and as a

14     result from one month to the next, the next 6 months, the

15     rare earth was reduced by 72 percent.

16          And naturally, of course, that was known by Li

17     Zheng.  And even before that took place, our evidence is that

18     they had the discussion and made the plan.

19          THE COURT:  Okay.

20          MR. MATTHEWS:  So we're talking about a scheme.

21          And part of that plan, of course, is that it's been

22     our position that his intrusion into the contracts of the

23     choice of law in China, particularly for two U.S. companies

24     who are doing business only in the U.S. and only with

25     themselves, highly unusual.

 1          And no other customers, and I will -- that's an

 2     evidentiary point.  But we -- we obviously know who were in a

 3     similar situation buying from them, had these particular

 4     clauses, except for those other companies that they recruited

 5     into their scheme.

 6          THE COURT:  Okay.

 7          MR. MATTHEWS:  So the issue on discovery,

 8     Your Honor, of course, has to -- we must be able to

 9     demonstrate the extent to which he exceeded or performed acts

10     that were outside of his duties and obligations.  That is why

11     the discovery must be a little broader, and that's why the

12     state court judge in his decision to allow pretty much

13     unlimited discovery, determined that given the case, for him

14     to have a hearing on Li Zheng -- Li Zheng's authority, would

15     essentially require a hearing on determining whether or not

16     there was evidence to prove the conspiracy, as well as their

17     relationship together.

18          THE COURT:  Okay.

19          MR. DEVANEY:  I don't -- Your Honor, unless you

20     have any other questions, I don't have anything further.

21          THE COURT:  No.  I don't.  Thank you.

22          MR. DEVANEY:  Got -- there, excuse me.

23          THE COURT:  I have before me a motion to stay

24     discovery by the defendants in this case.  And I take note

25     that the motion to compel arbitration should be decided

1  fairly quickly.  It was filed a long time ago, I think, was

2  it July or?

3          MR. DEVANEY:  It was filed in July, fully briefed

4  in early September.

5          THE COURT:  Right.  So Judge Hayden will

6  necessarily determine at that point arbitrability.  And under

7  Guidotti, I think right now it would be futile to permit

8  discovery to continue.  I'm going to temporarily stay

9  discovery until Judge Hayden makes her decisions in that

10  motion, and that will then dictate what type of discovery

11  should be taken.  I don't think any party's going to be

12  injured by a short temporary stay of discovery.

13          I thank you all.

14          MR. DEVANEY:  Very good, thank you very much,

15  Your Honor.

16          (Conclusion of proceedings at 12:04 P.M.)

17

18

19

20

21

22

23

24

25

1                          Certification

2          I, SARA L. KERN, Transcriptionist, do hereby certify

3     that the 33 pages contained herein constitute a full, true,

4     and accurate transcript from the official electronic

5     recording of the proceedings had in the above-entitled

6     matter; that research was performed on the spelling of proper

7     names and utilizing the information provided, but that in

8     many cases the spellings were educated guesses; that the

9     transcript was prepared by me or under my direction and was

10    done to the best of my skill and ability.

11         I further certify that I am in no way related to any of

12    the parties hereto nor am I in any way interested in the

13    outcome hereof.

14

15

16

17

18    S/ *Sara L. Kern*                    February 17, 2014

19    Signature of Approved Transcriber              Date

20

21
      Sara L. Kern, CET**D-338
22    King Transcription Services
      901 Route 23 South, Center Suite 3
23    Pompton Plains, NJ 07444
      (973) 237-6080
24

25