Gregory K. Mueller
Mueller Law Group
19 Engle Street
Tenafly, New Jersey 07670-2096
Tel. (201) 567-4969
E-mail: gmueller@muellerfirm.com

Glenn M. Kurtz (*pro hac vice pending*)
Douglas P. Baumstein (*pro hac vice pending*)
WHITE & CASE, LLP
1155 Avenue of the Americas
New York, New York 10036
Tel:   (212) 819–8200
*Attorneys for Plaintiff Minmetals, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MINMETALS, INC.,<br><br>                Plaintiff,<br>     vs.<br><br>DRAGON BOOM, LTD., a British Virgin Islands limited company; B&H AMERICAN, INC., a New Jersey Corporation; UNITED RESOURCES USA, INC., a New Jersey Corporation; GARY INTERNATIONAL HOLDINGS, LTD., a Hong Kong limited company; HANGZHOU BAOHANG INDUSTRIAL INVESTMENT GROUP, LTD., a People's Republic of China limited company; DANG MIN (a.k.a. MIN DANG), an individual; LI ZHENG, an individual; XIYOU XU (a.k.a. GRACE XU), an individual; ABC CORPORATIONS 1-10, and JOHN DOES 1-10,<br><br>                Defendants. | Case No.: 2:13-cv-03834<br>            (KSH-CLW) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF MINMETALS' MOTION TO COMPEL THE PRODUCTION OF DISCOVERY FROM <u>DEFENDANT DRAGON BOOM, LTD.</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...................................................................................................................1

PRELIMINARY STATEMENT .............................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND..............................................................2

    A.    Minmetals' Claims.............................................................................................2

    B.    Dragon Boom Has Repeatedly Misrepresented Its Involvement In The Fraudulent Scheme ..............................................................................................3

    C.    Minmetals' Efforts To Obtain Discovery From Dragon Boom.........................3

ARGUMENT ............................................................................................................................6

    A.    The Court Should Compel Dragon Boom To Produce Discovery In Response to Minmetals' Requests...........................................................................................6

        1.    Interrogatory No. 1................................................................................6

        2.    Requests Nos. 14, 16, 18 And 20...........................................................8

CONCLUSION.........................................................................................................................9

# TABLE OF AUTHORITIES

## CASES

Ngai v. Old Navy,
 No. 07-5653 (KSH) (PS), 2009 WL 2391282 (D.N.J. July 31, 2009)..........................................8

Official Comm. of Unsecured Creditors of Allegheny Health, Educ. & Research Found.
 v. PricewaterhouseCoopers, LLP,
 607 F.3d 346 (3d Cir. 2010)........................................................................................................7

## STATUTES AND RULES

D.N.J. Local Civil Rule 37.1....................................................................................................1

Fed. R. Civ. P. 37 .............................................................................................................1, 6, 7

## INTRODUCTION

Plaintiff Minmetals, Inc. ("Minmetals") respectfully moves the Court, pursuant to Rule 37(a)(3)-(4) of the Federal Rules of Civil Procedure and Local Civil Rule 37.1(b), for entry of an Order compelling Defendant Dragon Boom, Ltd. ("Dragon Boom") to provide responses to Plaintiff's Interrogatories Addressed to Dragon Boom, dated May 15, 2014, and First Set of Stage 1 Requests for the Production of Documents, dated May 15, 2014.

## PRELIMINARY STATEMENT

The primary focus of Stage 1 discovery is to ascertain facts relevant to Defendants' plan to re-raise their previously unsuccessful motion to compel arbitration. One issue relevant to such potential motion is the authority of Li Zheng, the former head of Minmetals' Rare Earth Department, whom Minmetals believes conspired with the Defendants[1] so that they could obtain rare earth at favorable prices and steal Minmetals' corporate opportunities by selling products to Minmetals' customers. Minmetals contends that the Defendants were bribing Li Zheng for his role in the conspiracy. Plainly, if a customer is providing kick-backs to an employee for improper conduct, there is no reasonable argument that the employee had authority to enter the transaction with such customer.

The evidence developed to date strongly suggests that Defendants were, in fact, bribing Li Zheng through payments totaling $70,000 made from Dragon Boom's bank account. That account is controlled by Dang Min who admits that he runs the day-to-day operations of corporate Defendants B&H, United, and Gary International Holdings, Ltd., but had previously

---

[1] Defendants are Dragon Boom, B&H American, Inc. ("B&H"), United Resources USA, Inc. ("United"), Gary International Holdings, Ltd. ("Gary"), Hangzhou Baohang Industrial Investment Group, Ltd. ("Hangzhou Baohang"), Dang Min (a/k/a "Min Dang"), Li Zheng and Xiyou Xu (a/k/a "Xu Xiyou").

misrepresented that he had no involvement with Dragon Boom.[2]  Minmetals has posed interrogatories and requested documents concerning these payments and other suspicious transactions.  Dragon Boom, however, has refused to respond, despite the obvious relevance of such information.  Dragon Boom may not refuse to produce relevant information merely because the information to be produced is damaging or because it does not like how Minmetals learned of Dragon Boom's apparent bribes to Li Zheng.  Dragon Boom should be required to produce the requested information.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Minmetals' Claims

Minmetals alleges that between July 2010 and February 2011, Dragon Boom conspired with the other named Defendants and Minmetals' longtime employee Li Zheng to misappropriate rare earth minerals from Minmetals at below-market prices so that they could co-opt Minmetals' corporate opportunities.  In what became a pattern of misinformation and fraudulent conduct, Li Zheng, the general manager of Minmetals' Rare Earth Department, sold Minmetals' rare earth minerals, often at below-market prices, to one or more of the Defendants, in contravention of Minmetals' policies against selling its product to non-end users of rare earth or potential competitors.  In turn, Minmetals believes that Defendants then sold the rare earth to customers developed by Minmetals or, even in some cases, back to Minmetals itself, at higher prices.  The end result of Defendants' machinations was that Defendants obtained rare earth at prices and quantities not possible in the ordinary course of business, which they used to misappropriate Minmetals' sales and relationships with its end-user customers.

---

[2] Minmetals has previously detailed Dragon Boom's and Dang Min's factual misrepresentations to this Court and the New Jersey state court in its opposition to Dragon Boom's motion for discovery sanctions, dated November 3, 2014 (Dkt. No. 99), at 1 and 7-9.

### B. Dragon Boom Has Repeatedly Misrepresented Its Involvement In The Fraudulent Scheme

Dragon Boom and the other Defendants have asserted that they dealt at arm's-length with Li Zheng, and justifiably relied on his authority to enter the disputed transactions on behalf of Minmetals. Dragon Boom's banking account documents obtained from HSBC (the "HSBC Documents"), pursuant to a validly issued order by the High Court of the Hong Kong Special Administrative Region Court of First Instance, show that prior to Minmetals' discovery of the fraud, Dragon Boom made two separate payments totaling $70,000 to the bank account of "Xiong Wei", held at China Merchants Bank in mainland China. (Declaration and Certification of Douglas P. Baumstein ("Baumstein Decl.") Ex. 1) "Xiong Wei" is the name of Li Zheng's wife, spelled phonetically in English. (Baumstein Decl. Ex. 2 ¶ 4) These payments were made in round, United States dollar-denominated payments of exactly $50,000 on November 12, 2010 and $20,000 on January 14, 2011—during the height of the alleged conspiracy. (Baumstein Decl. Ex. 1) Thus, the HSBC Documents indicate that, contrary to Defendants' assertion that they were dealing with Li Zheng at arm's-length and in good faith, they were in fact bribing him for his participation in the scheme.

### C. Minmetals' Efforts To Obtain Discovery From Dragon Boom

Minmetals served its discovery requests on Dragon Boom on May 15, 2014. (Baumstein Decl. Exs. 3-4) Among others, Minmetals requested that Dragon Boom respond to the following interrogatory ("Interrogatory"):

1. Describe In Detail (as defined above) the reason, basis and/or purpose of each payment (as defined above) from and to Gao Yujun (a/k/a Yujun Gao); Weicheng Wang's Attorney Trust Account; Xiong Wei (a/k/a Wei Xiong); Fucheng Li (a/k/a Li Fucheng); Asian Metal, Ltd.; Xiy[ou] Xu (a/k/a Xu Xiy[ou]) and Dang Min (a/k/a Min Dang).

(Baumstein Decl. Ex. 3 at 15)  Minmetals also requested that Dragon Boom produce documents in response to the following requests (the "Requests"):

14. All Documents Related To all Payments by You;

16. All Documents Related To all Payments by You that were Related To Rare Earth;

18. All Documents Related To all Payments by You that were Related To Minmetals;

20. All Documents Related To all Payments from You that were Related To Li Zheng.

(Baumstein Decl. Ex. 4 at 19-20)

On July 1, 2014, Dragon Boom served its Responses and Objections to Minmetals' Interrogatories and Requests ("Responses").  (Baumstein Decl. Exs. 5-6)  Dragon Boom objected to responding to Interrogatory No. 1 on the grounds that "it s[ought] to elicit information that is not within the parameters of permissible Stage 1 discovery as delimited by the Pretrial Scheduling Order dated April 28, 2014" and "to the extent that it is based upon banking information which was improperly obtained by Plaintiff."  (Baumstein Decl. Ex. 5 at 4-5)  Without waiving these objections, Dragon Boom responded that "to the extent that a response is required, defendant asserts that there is no relationship between the parties named and/or payments purportedly made to them and the rare earth transactions alleged in the First Amended Complaint."  (Baumstein Decl. Ex. 5 at 4-5)

Similarly, Dragon Boom objected to producing documents responsive to the document requests on the grounds that these requests were "overbroad and harassing in nature, and impermissibly exceed[ed] the parameters of Stage 1 discovery as delimited by the Pretrial Scheduling Order, dated April 28, 2014."  (Baumstein Decl. Ex. 6 at 11-14)  Without waiving these objections, Dragon Boom agreed to produce non-privileged, responsive documents related to these requests.  (Baumstein Decl. Ex. 6 at 11-14)  Notwithstanding its agreement to do so, Dragon Boom has not produced any documents in response to the document Requests (including

the HSBC Documents and other related banking and payment records, which are under Dragon Boom's custody or control).[3]

In an effort to resolve the disputes and to expedite discovery without involving the Court, counsel for Minmetals contacted counsel for Dragon Boom via letter dated August 14, 2014, requesting "discovery regarding payments made to a number of individuals whom we believe to be related to Li Zheng, including individuals named 'Xiong Wei.'" (Baumstein Decl. ¶ 14 and Ex. 7 at 5)  Counsel for Dragon Boom did not respond to this letter.  (Baumstein Decl. ¶ 14)  The parties' counsel later met and conferred telephonically on September 8, 2014, at which time counsel for Dragon Boom agreed to speak with his client regarding Minmetals' requests concerning payments by Dragon Boom to specific individuals, including Xiong Wei.[4]  (Baumstein Decl. ¶ 15)  Counsel met and conferred by telephone again on September 16, 2014, at which time, counsel for Dragon Boom did not agree to provide the information sought.  (Baumstein Decl. ¶ 16)  Shortly thereafter, Dragon Boom filed a motion to exclude the HSBC Documents and to impose discovery sanctions against Minmetals.  (Baumstein Decl. ¶ 17)  Minmetals opposed this motion, which is currently pending before this Court.  (Baumstein Decl.

---

[3] In proceedings before the New Jersey state court, Minmetals requested Dragon Boom's banking records as well as documents concerning payments by Dragon Boom relating to Li Zheng, Minmetals or rare earth.  (Baumstein Decl. Ex. 8, Request Nos. 27, 29, 57, 62 and 104). In response to these Requests, Dragon Boom omitted any reference to the payments to Xiong Wei and represented that the requested documents were "not available for the period requested" and that there were "no documents of the type described" in its possession.  (Baumstein Decl. Ex. 9, at Response Nos. N7, 12-13, 21).  Dragon Boom further annexed three pages of banking records from its account with HSBC to this Response, none of which revealed payments to Xiong Wei.  (Baumstein Decl. Ex. 10)

[4] The other suspicious payments identified include payments to Gao Yujun (apparently an employee of defendant United), Li Fucheng (a/k/a Fucheng Li) (an individual in the United States who may have the same surname as Li Zheng); Dang Min (the B&H and United employee at the center of the allegations here, who has previously testified (in contradiction to the HSBC Documents) that he has no relationship to Dragon Boom); and Xiyou Xu (Dang Min's wife).

¶ 17) Subsequent to the filing of the motion, counsel for Dragon Boom has stated that it will agree to respond to the above requests if it is unsuccessful in its motion for sanctions. (Baumstein Decl. ¶ 18)

Counsel spoke via telephone on January 13, 2015, at which time counsel for Dragon Boom again objected to supplementing its response to Interrogatory No. 1 and to supplementing its production with documents responsive to the Requests. (Baumstein Decl. ¶ 19). To date, Dragon Boom has not produced documents or otherwise explained the basis for the various payments identified in Interrogatory No. 1 or otherwise indicated that any response is forthcoming. (Baumstein Decl. ¶ 20).

## ARGUMENT

### A. The Court Should Compel Dragon Boom To Produce Discovery In Response To Minmetals' Requests

Rule 37 of the Federal Rules of Civil Procedure provides that a party may move for an order compelling disclosure or discovery for failure to answer an interrogatory or permit inspection as requested. Fed. R. Civ. P. 37(a)(3)(B). For purposes of this Rule, "evasive or incomplete disclosures, answers or responses shall be treated as a failure to disclosure, answer or respond." Id. at 37(a)(4).

#### 1. Interrogatory No. 1

Interrogatory No. 1 seeks information regarding the purpose of Dragon Boom's payments to a number of individuals including "Xiong Wei (a/k/a) Wei Xiong." As stated above, Minmetals believes that "Xiong Wei" is Li Zheng's wife. This Interrogatory seeks information regarding the justification for that and other suspicious payments made by Dragon Boom.

Dragon Boom objected to this Interrogatory on the grounds that "it s[ought] to elicit information that is not within the parameters of permissible Stage 1 discovery as delimited by the

Pretrial Scheduling Order."  To the contrary, this Interrogatory seeks information directly within the scope of the Pretrial Scheduling Order.  (Baumstein Decl. Ex. 11).  The Pretrial Scheduling Order identified six topics for Stage 1 discovery, including "any transactions [during the relevant time period] in which Li Zheng was involved."  (Baumstein Decl. Ex. 11 at 1).  Payments made to Li Zheng's wife plainly relate to transactions involving Li Zheng.

Further, information regarding whether Dragon Boom paid Li Zheng's wife or other relatives further falls directly within the scope of the Pretrial Scheduling Order in that it goes directly to Minmetals' allegations that Dragon Boom did not rely in good faith on Li Zheng's authority to enter into the disputed transactions.  A third party's reliance on an agent's apparent authority is not justifiable where "both the agent and the third party know . . . that the agent's conduct goes unsanctioned by one or more tiers of corporate governance" or "when the third party and an agent collude against the corporation."  Official Comm. of Unsecured Creditors of Allegheny Health, Educ. & Research Found. v. PricewaterhouseCoopers, LLP, 607 F.3d 346, 353-54 (3d Cir. 2010).  Consequently, the issue of arbitrability is inextricably intertwined with allegations of the Defendants' complicity with Li Zheng's fraudulent conduct.  Two payments in round U.S. dollar denominations, to an individual in China who may be Li Zheng's wife, at the height of the alleged conspiracy, are strong evidence that Dragon Boom conspired with Li Zheng and knew he was acting outside his authority in entering into contracts with the Defendants.  Thus, Dragon Boom cannot object to supplementing this Interrogatory on the basis that it exceeds the scope of the Pretrial Scheduling Order.

Dragon Boom's second objection, that this (and other) discovery is based on improperly obtained banking information, is also without merit.  As demonstrated by Minmetals' opposition to Dragon Boom's motion for discovery sanctions (Dkt. No. 99), Minmetals obtained

information regarding Dragon Boom's HSBC account pursuant to a legal and valid court order issued in Hong Kong.  (Baumstein Decl. Ex. 12 ¶¶ 7, 17).  Nor does the origin of the discovery have any bearing on Dragon Boom's obligation to produce discovery here.  Discovery under the Federal Rules of Civil Procedure is broad by design, to aid in the search for truth.  See Ngai v. Old Navy, No. 07-5653 (KSH) (PS), 2009 WL 2391282 (D.N.J. July 31, 2009) ("the underlying goal of our discovery rules [is] getting to the truth") (quoting Hall v. Clifton Precision, 150 F.R.D. 525, 528 (E.D. Pa. 1993)). Dragon Boom cannot avoid discovery that is adverse to it merely because it believes (incorrectly) that Minmetals improperly learned of the existence of the evidence.  Indeed, even if the HSBC Documents were improperly obtained (and they were not), Dragon Boom would still be required to produce them in response to Minmetals' document requests.

Dragon Boom cannot reasonably contend that it has provided a responsive answer to Interrogatory No. 1.  Dragon Boom evasively responded to this Interrogatory that "to the extent that a response is required, defendant asserts that there is no relationship between the parties named and/or payments purportedly made to them and the rare earth transactions alleged in the First Amended Complaint."  (Baumstein Decl. Ex. 5 at 5).   Such a broad-brush *ipse dixit* response does not suffice to explain the reason for the suspicious payments.

### 2. Requests Nos. 14, 16, 18 and 20

Requests Nos.14, 16, 18 and 20 seek documents pertaining to payments by Dragon Boom, specifically documents in relation to rare earth payments, Minmetals and Li Zheng. Dragon Boom objected to producing documents on the grounds that these requests were "overbroad and harassing in nature, and impermissibly exceed[ed] the parameters of Stage 1 discovery as delimited by the Pretrial Scheduling Order, dated April 28, 2014."  (Baumstein Decl. Ex. 6 at 11-14)  As discussed above, documents concerning suspicious payments to various

individuals are relevant to the issue of authority and payments relating to rare earth, Minmetals and Li Zheng and fall squarely within the scope of the Court's Pre-Trial Scheduling Order. Contrary to Dragon Boom's objections, the information sought by these Requests is not unduly burdensome, but consists of payment records that Dragon Boom would have maintained in its regular course of business and which would be readily available in its files or by requesting them from third parties with a duty to provide such information (such as HSBC).

Although, without waiving its objections, Dragon Boom agreed to produce non-privileged, responsive documents related to these Requests, Dragon Boom has failed to produce responsive documents concerning its various payments. Dragon Boom should not be permitted to delay further.

## CONCLUSION

For the foregoing reasons, Minmetals respectfully requests that the Court grant its Motion and order Dragon Boom, within ten days, to serve complete responses to Interrogatory No. 1, and to produce documents for discovery and inspection pursuant to Requests Nos. 14, 16, 18 and 20. Minmetals further requests that the Court order Dragon Boom to pay costs and attorneys' fees associated in bringing this motion as sanctions for noncompliance.

|  |  |
|---|---|
| Dated:  January 15, 2015 | Respectfully submitted,<br><br>/s/ Gregory K. Mueller<br>Gregory K. Mueller<br>Mueller Law Group<br>19 Engle Street<br>Tenafly, New Jersey 07670-2096<br>Tel. (201) 567-4969<br>E-mail: gmueller@muellerfirm.com<br><br>Douglas P. Baumstein (pro hac vice pending)<br>Glenn M. Kurtz (pro hac vice pending)<br>White & Case LLP<br>1155 Avenue of the Americas<br>New York, New York 10036<br>Tel. (212) 819-8200<br>Attorneys for Plaintiff Minmetals, Inc. |