**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MINMETALS, INC.,<br><br>                Plaintiff,<br><br>     v.<br><br>DRAGON BOOM, LTD., a British Virgin Islands limited company; B&H AMERICAN, INC., a New Jersey Corporation; UNITED RESOURCES USA, INC., a New Jersey Corporation; GARY INTERNATIONAL HOLDINGS, LTD., a Hong Kong limited company, PRECIOUS RESOURCES INTERNATIONAL LIMITED, a British Virgin Islands limited company, HANGZHOU BAOHANG INDUSTRIAL INVESTMENT GROUP, LTD., a People's Republic of China limited company; DANG MIN (a.k.a. MIN DANG), an individual; LI ZHENG (a.k.a. ZHENG LI), an individual; XIYOU XU (a.k.a. GRACE XU), an individual; ABC CORPORATIONS 1-10, and JOHN DOES 1-10,<br><br>                Defendants. | Civil Action No. 2:13cv3834 (KSH)(CLW)<br><br><br>**<u>OPINION & ORDER</u>** |

      **THIS MATTER** comes before the Court on Defendant Dragon Boom's ("Dragon Boom") motion for the imposition of sanctions against Plaintiff Minmetals ("Plaintiff" or "Minmetals"). Dragon Boom seeks to preclude Minmetals from using in this action the Hong Kong HSBC banking records of Dragon Boom that Minmetals obtained pursuant to an injunction issued in Hong Kong. The Court declined to hear oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure and, for the reasons set forth below, the Court denies Dragon Boom's motion.

      The posture of this litigation—from arbitration in China, to injunction proceedings in Hong Kong, and then to state and federal court—need not be recounted in depth here. On October 15,

2012, Plaintiff filed its First Amended Complaint against Defendants in the Superior Court of New Jersey, Chancery Division. (First Am. Compl., ECF No. 1, Attachments 1-4.) On June 19, 2013, Defendants removed the matter to U.S. District Court for the District of New Jersey. (Notice of Removal, ECF No. 1.) This case concerns the propriety of various transactions of rare earth minerals, which are "economically exploitable deposits" of "seventeen chemical elements in the periodic table" and are found primarily in China. (First Am. Compl. ¶¶ 1-4.)  Minmetals is a New Jersey-incorporated subsidiary of the state-owned China Minmetals Corp. (Id. ¶ 5.) Minmetals alleges that one of its employees, Defendant Li Zheng ("Zheng"), conspired with the other Defendants to enter into a series of transactions in which Minmetals, on Zheng's authority, exploited a market shortage by reselling rare earth minerals at below-market prices to the corporate Defendants, which are controlled in whole or in part by Defendant Dang Min ("Min"). (Id. ¶¶ 3-16, 21-48.) Minmetals claims that the corporate Defendants then sold the rare earth minerals to Minmetals' customers or to Minmetals itself at higher prices. (Id. ¶¶ 21-48.) Minmetals details several "conspiratorial transactions" involving Defendants as bases for its claims for relief. (Id. ¶¶ 62-144.) Minmetals seeks damages and declaratory and equitable relief based on claims for fraud, breach of fiduciary duty, unjust enrichment, conversion, conspiracy, and interference with business relations. (Id. ¶¶ 145-250.)

Dragon Boom denies Plaintiff's allegations and submits counterclaims in which it alleges that Minmetals failed to perform under contracts for the sale of rare earth minerals to Dragon Boom.[1] (Answer and Counterclaims of Dragon Boom, ECF No. 1, Attach. 6-7.) These transactions, which Minmetals characterizes as "the aborted Dragon Boom transactions," give rise to the instant dispute. (First Am. Compl. ¶¶ 49-61, 129-44; Counterclaim ¶¶ 1-47.) In particular,

---

[1] Dragon Boom's third counterclaim, for anti-competitive conduct in New Jersey, was dismissed with prejudice on April 15, 2013. (Notice of Removal ¶ 25.)

the parties' respective claims for relief concern the sale of lanthanum oxide and neodymium oxide from Minmetals to Dragon Boom for about $2.5 million (the "contract price")—a sale that went unconsummated. (First Am. Compl. ¶¶ 129-44; Counterclaim ¶¶ 14-47; Notice of Removal ¶ 37.) As a result of Minmetals' alleged failure to deliver or refund the contract price, Dragon Boom pursued arbitration pursuant to the terms of the contracts and, on March 21, 2012, obtained an award from the China International Economic and Trade Arbitration Commission ("CIETAC" and "CIETAC award").[2] (Id.)

As set forth in Dragon Boom's motion for sanctions (ECF No. 91) and reply brief (ECF No. 100), as well as in Minmetals' response in opposition (ECF No. 99) and surreply[3] (ECF No. 105), in July 2013 the parties entered into an agreement whereby Minmetals would satisfy the CIETAC award by transmitting about $3 million to Dragon Boom's Hong Kong HSBC bank account. Prior to transferring the funds to Dragon Boom's account, however, Minmetals petitioned for and secured an *ex parte* Mareva injunction[4] from the High Court of the Hong Kong Special Administrative Region Court of First Instance ("Hong Kong Court"). (*Ex Parte* Decision, July 12, 2013, ECF No. 91-6.) The Hong Kong Court thereby enjoined Dragon Boom from disposing of assets in the Hong Kong HSBC account to which Minmetals had transmitted funds in accordance with the parties' agreement to satisfy the CIETAC award. In addition, Minmetals sought and the Hong Kong Court ordered disclosures by HSBC in relation to Dragon Boom's HSBC account ("HSBC records"). (*Ex Parte* Decision ¶ 7.) Minmetals contends that these documents, *inter alia*,

---

[2] The CIETAC award is the subject of Dragon Boom Limited v. Minmetals, Inc., 2:13-cv-03072, filed on May 14, 2013 ("Enforcement Action"), in which Dragon Boom petitions the Court to confirm the award. That matter is stayed as of February 19, 2014. (Enforcement Action, ECF No. 29.)

[3] Plaintiff sought leave to file a surreply (ECF No. 101) and the Court granted the request (ECF No. 103).

[4] Mareva Compania Naviera S.A. v. International Bulkcarriers S.A., 2 Lloyd's Rep. 509; Lars E. Johansson, The Mareva Injunction: A Remedy in the Pursuit of the Errant Defendant, 31 U.C. Davis L. Rev. 1091, 1094-98 (1998); see also Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 327-28 (1999) (discussing advent of Mareva injunction and declining to authorize such a mechanism).

reveal Min's previously undisclosed control of Dragon Boom and "demonstrate that the defenses raised by the Defendants are false and that the Defendants have repeatedly made misrepresentations to this Court and the New Jersey state court."

Dragon Boom seeks to preclude Minmetals' use of the HSBC records as well as evidence derived therefrom or discovered as a result thereof. The basis for Dragon Boom's request arises out of apparent misrepresentations made by Minmetals' Hong Kong counsel in the *ex parte* hearing; Dragon Boom raised these misrepresentations before the Hong Kong Court in an *inter partes* hearing on October 10, 2013 and the Hong Kong Court addressed them in its decision issued on May 12, 2014. (*Inter Partes* Decision, May 12, 2014, ECF No. 91-7.) The reviewing Hong Kong Court, resolving ambiguities against Minmetals in light of the "stringent" duty of full and frank disclosure to the issuing Court, found that Minmetals' Hong Kong counsel had breached her duty of full and frank disclosure to the issuing Court insofar as she failed to articulate Dragon Boom's "specific defenses and counterclaims," failed to clarify that Dragon Boom had not joined the motion to dismiss in New Jersey state court, failed to accurately characterize the status of the CIETAC case, and made the "indisputably untrue" representation that the goods at issue in the contracts were delivered to Dragon Boom. (*Inter Partes* Decision ¶¶ 41-51.) The reviewing Hong Kong Court first concluded that "fairness requires the Injunction to be discharged," then "took into account all the circumstances of the case instead of the mere fact of material non-disclosure," and concluded that, "[c]onsidering all the circumstances discussed above, including those with reference to the evidence obtained by Minmetals subsequent to the grant of the injunction *ex parte*, [it was] just and convenient to re-grant the Injunction *inter partes*." (Id. ¶¶ 52-55, 67.)

In addition to the material non-disclosures recounted by the reviewing Hong Kong Court, Dragon Boom alleges that Minmetals' Hong Kong counsel impermissibly failed to disclose the

presence of a discovery order issued in New Jersey state court and improperly modified the proposed disclosure order submitted to the *ex parte* Hong Kong Court such that the parameters of discovery were expanded.

It is against this backdrop that Dragon Boom asks this Court to exercise its inherent authority to impose sanctions against Minmetals. "[A] district court has inherent authority to impose sanctions upon those who would abuse the judicial process." Republic of Philippines v. Westinghouse Elec. Corp., 43 F.3d 65, 73 (3d Cir. 1994) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 43-44 (1991)); Saldana v. Kmart Corp., 260 F.3d 228, 237-38 (3d Cir. 2001) (summarizing history of inherent authority). However, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." Westinghouse, 43 F.3d at 74 (quoting Chambers, 501 U.S. at 44) (internal quotations omitted). Thus, the Court "must ensure that there is an adequate factual predicate" for employing its inherent powers "and must also ensure that the sanction is tailored to address the harm identified." Westinghouse, 43 F.3d at 74. As when considering whether to impose sanctions under the Federal Rules, the Court must consider the conduct at issue and explain why the conduct warrants sanction. Id. Further, the Court "must specifically consider the range of permissible sanctions and explain why less severe alternatives to the sanction imposed are inadequate or inappropriate." Id. Finally, the Court may consider factors such as 1) the nature and quality of the conduct at issue; 2) whether the attorney or the client is responsible for the culpable conduct; 3) whether there was a pattern of wrongdoing requiring a stiffer sanction; 4) whether the wrongdoing actually prejudiced the wrongdoer's opponent or hindered the administration of justice; and 5) the existence of mitigating factors. Id.

Dragon Boom characterizes the proceedings instituted by Minmetals in Hong Kong as "a transparent effort to circumvent the discovery process in this case" and emphasizes the non-

disclosures of Minmetals' Hong Kong counsel in the *ex parte* proceedings as cause for this Court to exercise its inherent authority to impose sanctions, i.e., to preclude Minmetals from using the Hong Kong HSBC records of Dragon Boom. The Court recognizes the gravity of the misrepresentations made by Minmetals' Hong Kong counsel, and notes that "[i]t is professional misconduct for a lawyer to [. . .] engage in conduct involving dishonesty, fraud, deceit or misrepresentation." N.J. R.P.C. 8.4(c). The Court is not convinced, however, that the facts presented warrant sanctions, as Dragon Boom has identified only fleeting harm caused by Minmetals' Hong Kong counsel. That is, subsequent to the *ex parte* proceedings on which Dragon Boom now concentrates, Dragon Boom enjoyed the benefit of a full adversarial process in challenging the <u>Mareva</u> injunction, the reviewing Hong Kong Court duly addressed the conduct of Minmetals' Hong Kong counsel, and that Court nonetheless re-granted the injunction without varying its decision as to the disclosure of Dragon Boom's HSBC records. (*Inter Partes* Decision ¶¶ 41-67; Gall Declaration ¶¶ 13-21, ECF No. 99-2.) By virtue of the decision of the reviewing Hong Kong Court, it would be unwarranted to conclude that Minmetals ultimately obtained the HSBC documents in sanctionable fashion.

The principle of comity also weighs heavily here: not only does the content of the reviewing Court's decision counsel strongly against this Court against utilizing its inherent powers, but also this Court is not inclined to revisit the reviewing Court's decision, particularly where the relief at issue—a <u>Mareva</u> injunction—is a device not available to domestic courts. <u>See</u> <u>Westinghouse</u>, 43 F.3d at 75 ("Comity is essentially a version of the golden rule[.]"). Similarly, the Court is not positioned to dispute the certifications made by Minmetals' Hong Kong counsel as to Hong Kong legal practice in connection with *ex parte* <u>Mareva</u> injunctions and associated discovery. (Gall Decl. ¶¶ 2-16.) Moreover, the parties agree that discovery properly obtained in

one case may be used in another litigation; the *Ex Parte* Decision likewise provides as much. (*Ex Parte* Decision ¶ 17; Gall Decl. ¶¶ 10, 15, 21.) Still, Dragon Boom maintains that the instant motion does not concern "respecting the order of the Hong Kong court, but of preserving the integrity of the judicial process in this court by preventing [Minmetals] from benefitting from its carefully planned *ex parte* circumvention of the discovery process." This argument also is unavailing because, as discussed above, the reviewing Hong Kong Court duly considered the circumstances surrounding the grant of the *ex parte* Mareva injunction, discharged the injunction, and then re-granted the injunction in all respects material here, thus rendering the misrepresentations harmless.

While the conduct at issue was improper, the Court discerns neither a pattern of offensive conduct nor prejudice to Dragon Boom. This is especially true in light of the parties' opportunity to air the issues before the reviewing Hong Kong Court—a proceeding for which there are no indicia of misconduct. And although the Court accepts that Minmetals' decision to seek the Mareva injunction may have been part of a global litigation strategy, there is no evidence that this strategy was taken in bad faith or otherwise in sanctionable fashion. There is also no evidence that the misrepresentations made at the *ex parte* stage are attributable to Minmetals' domestic counsel or to Minmetals itself. Thus, there is not an adequate factual predicate of sufficient gravity to warrant sanctions.

Finally, the Court is not satisfied from the express terms of the New Jersey Court's Order that discovery relating to Dragon Boom's HSBC records was contemplated by the parties or the New Jersey Court; indeed, the Order apparently concerns a "motion to quash the commissions and accompanying subpoenas against Bank of China, Ltd., and the Agricultural Bank of China, Ltd." (Order, September 14, 2012, ECF Nos. 91-11 and 99-35.) In any event, Dragon Boom offers no

authority to support the proposition that the discovery orders issued by the New Jersey Court had an effect on the <u>Mareva</u> proceedings in Hong Kong such that Minmetals is sanctionable as a result of securing a lawful injunction through those proceedings. Specifically, the Court does not read the cases cited by Dragon Boom to authorize sanctions where, as here, the discovery order did not contemplate the particular firm and foreign entity from which discovery was ultimately and lawfully obtained. <u>See</u> <u>In re Diet Drugs</u>, 282 F.3d 220, 232, n.7 (3d Cir. 2002) (quoting 28 U.S.C. § 1450 and <u>Nissho–Iwai Am. Corp. v. Kline</u>, 845 F.2d 1300, 1304 (5th Cir. 1988)). Rather, these cases address the more general proposition that orders issued prior to removal that shall remain in full force and effect until dissolved or modified by the district court. <u>Kline</u>, 845 F.2d at 1303-05 (upholding sanctions issued by state court and upheld by district court after removal pursuant to § 1450 where sanctioned party "deliberately and repeatedly violated state court orders requiring her to produce subpoenaed documents and answer questions"). Upon examination of the New Jersey Order by its terms—and with respect for comity—the Court declines to so broadly construe the Order as to support sanctions against Minmetals.

In consideration of the particular circumstances presented as well as the fact that the imposition of sanctions pursuant to the Court's inherent authority must be undertaken sparingly, the Court denies Dragon Boom's motion for sanctions.

**ACCORDINGLY, IT IS** on this 6th day of April, 2015,

**ORDERED** that Defendant Dragon Boom's motion for sanctions is **DENIED**; and

**FURTHER ORDERED** that the Clerk shall terminate ECF No. 91.

*s/Cathy L. Waldor*
**CATHY L. WALDOR**
**United States Magistrate Judge**